Case number 23-1342 et al. Nevada Irrigation District Petitioner versus Federal Energy Regulatory Commission. Mr. McBride for the petitioner, Mr. Fish for the respondent, Ms. McCarthy for the interviewer. Good morning, counsel. Good morning. Mr. McBride, please. Thank you. When you're ready. May it please the court. No party in this case disputes, and I cite FERC's brief at 20 for this, that a state can waive its right to issue a water quality certification under section 401 regardless whether the state and the applicant have entered into a written agreement to avoid the Act's one-year deadline. Question presented in this case is what kind of evidence is sufficient to show coordination and thus waiver without an express agreement. Our position is if the evidence presented by NID is not enough, nothing ever could be. Before I turn to the evidence of waiver, a few points about FERC's brief. First of all, we know something could be because HOOPA already told us what the circumstances could be that establish coordination that affects a waiver, right? It did, but some people have misconstrued it to say that it requires an express agreement and FERC concedes at page 20 of its brief that it does not, that it only requires a functional agreement or evidence of coordination. Of coordination, I take it what was going on in HOOPA was that there was coordination because the state was in on the effort to make sure that the state didn't resolve the matter within a year, so it wanted, it didn't want to resolve it within a year, whereas it seems like what's different about the circumstances like those that issue here are there's no reason to think that there wasn't every ability and interest in resolving it in a year, it's just that instead of denying it and then having a reapplication, there was a withdrawal and a reapplication, which seems functionally equivalent at some level. Well, with all due respect, there is absolutely no evidence that the state ever was prepared to deny without prejudice, even though FERC claims that on its brief. You won't find that anywhere in any of the state's communications to us. It finally denied without prejudice, surprisingly, to PG&E in December of 2018 and to NID in January 2019, and let me tell you what was happening. The oral argument in HOOPA was on October 1, 2018. Everybody in the industry was following this. It was a very good chance this court was going to find waiver. It was apparent to anybody who was there to listen to the argument, and so the State Board decided to change its MO and start denying without prejudice, and that's what it did in both of these projects, but before then, the relevant time period is 2012 through 2017 or 18 for these two projects. There was always a determination to withdraw and resubmit, and the question is whether the state elicited that, induced that, encouraged that, agreed to that, and our overwhelming evidence is that the state did so, that the State Board kept encouraging the applicants in projects across the state, but in particular PG&E and NID, to withdraw and resubmit, to buy more time for the state to complete its CEQA process. That's what was going on. That was the functional agreement. That satisfies the holding in HOOPA, and in any event, even if you were to find some stray language that you construe to mean prepared to deny without prejudice, that is not a denial within the meaning of TURLOC. That is not an action that satisfies Section 401, and therefore this case does not fit under TURLOC. There was no action by the state to cut off the one-year period and thus trigger waiver. The state induced these applicants to file, to withdraw and resubmit, and yes sir. At least as to the Yuba-Bear proceeding, the Ninth Circuit held, if you put aside the new evidence, which I completely understand that argument, are you disputing that we and you are bound by the Ninth Circuit's holding that the pre-existing evidence did not show the type of coordination that's required? Thank you for the clarification. That is the very narrow holding of the Ninth Circuit, that the evidence presented at that time was insufficient to support waiver. That's all the Ninth Circuit held. So as to Yuba-Bear, this case comes down to the new evidence and whether FERC properly deemed it late, and then whether it's sufficient. Well, not quite. The new evidence together with those earlier communications that the Ninth Circuit said in and of themselves were insufficient, and I maintain in the totality of the evidence before you, those communications, the subsequent emails that we produced the new evidence as you referred to it, the email traffic between PG&E and the State Board that we didn't have until we filed for re-hearing or our supplemental petition on remand below, and the declaration of the project manager for NID, and the affidavit of NID's consultant, who was also consultant to many other projects, including Drum Spaulding, which became Deer Creek. All of that, all of that. I appreciate all that, and I'm just trying to figure out the scope of the argument. Yes, sir. Is the same thing true as to Drum Spaulding? In other words, without the new evidence, you would agree the pre-existing evidence on its own is insufficient? No, and because Drum Spaulding was not before the Ninth Circuit, okay? Ninth Circuit's holding never reached that evidence, and we didn't have that evidence until we were back before FERC, and the email traffic, I think, unmistakably in Deer Creek, it was with PG&E at the time, demonstrates the project engineer at the State Board said, you know, as done in the past, please withdraw and resubmit, and then he thanked them for coordinating with him on this. This is JA 527 and 529, if I recall from memory. Both emails are there, and so the point of all this was, Judge Garcia, the State Board induced the withdrawal and resubmittal, and in FERC decisions, including Village of Morrisville, I know Judge Katsas was on the panel, I'm not trying to re-argue the merits there, but in FERC's decisions in Village of Morrisville at 173 FERC and 174 FERC, especially in the latter at footnote 27, FERC cites a series of proceedings in which email traffic between the State Board and applicants in those proceedings included language very much like the language here, Judge Garcia. Please withdraw and resubmit. And there are variations on the theme, there was even one in the South Feather proceeding in which they said, you know the drill. It seems to me one difficulty for your case is that there were materially identical emails before the Ninth Circuit, not as to, you know, Drum Spalding, but one of them says please submit, withdraw, resubmit, and I trust you know the rest of it, but it was very similar to the Choi email. Well, we don't really agree with that because there may be some language that is similar. I'm not going to say there isn't any language that is similar, but again, if you go back to 527 and 529 of the Joint Appendix, you'll see that there is language that didn't appear in the emails or communications before the Ninth Circuit as done in the past, so this is part of a pattern or practice. This is in 2018, in January, and then at J529, the person who sent that email from the State Board then gets the letter back from PG&E saying that they would resubmit their application and he says thanks for coordinating with me on this. That kind of language was never before the Ninth Circuit as to any of the three projects that were there, either the as done in the past or thanks for coordinating with me on this, and Mr. Lynch's affidavit demonstrates beyond a shadow of a doubt that in every major hydro project, because he's involved in many of them in the state of California, this was the MO the State Board was following, encouraging withdrawal and resubmittal until the gig was up, until this court's oral argument in Hoopa Valley, and then suddenly they decided to start denying without prejudice. What's wrong with that? What's wrong with what? They deny without prejudice or they ask you to withdraw and resubmit. It's the same effect. Nothing wrong with that. They were entitled, as Turlock held, to deny and that that constitutes action. I'm not quarreling with the Turlock holding. Our point is the waiver occurred years before, in 2013 or 2014, depending on how you view it, because just like Hoopa Valley, our clients, PG&E also and NID, applied for water quality certification and then the State Board encouraged them to withdraw and resubmit. And you withdrew. Well, we withdrew but with coordination. There's no application for them to act on. Well, there's no application for them to act on once we withdraw. I'm not disputing that, Judge. I mean, it's a perfectly obvious reading of the text and, you know, we made an exception on extreme facts in Hoopa where the agreement in advance to serially withdraw and resubmit the exact same application made it reasonable to think of it's just the same application. It's effectively pending the whole time. Same here. We don't have that here. Pardon me? Yes, the application's never changed. If you look at the correspondence, they applied in 2012 and then they keep withdrawing and resubmitting the same application year after year after year. That fact is the same, okay? And then also, may I remind you that what FERC cited in the Village of Morrisville decision, for example, a whole series of emails that it held constituted coordination. Things like, I'm checking with you about the withdraw and resubmit a letter. Can I ask you, suppose that the way that the agency responds is just to say, look, there's no practical difference at the end of the day, and I'm not sure what the practical difference is, just parenthetically, between your withdrawing it and then resubmitting it and us denying it and your resubmitting it. Honestly, it doesn't matter all that much, so just do whichever you'd prefer. And then the applicant chooses to withdraw and resubmit. I think you would agree that there'd be no waiver in that situation. Well, if the state encourages the withdraw and resubmit, I'll prefer it. But just on the facts as I lay them out, which is that the state in either way, functionally the same thing, either you withdraw and resubmit or we deny because your application is incomplete or because we can't, we don't have the evidence that we need right now, and you resubmit. Either way, it's going to amount to the same thing. Just do with whichever one you want. It's not going to matter. You would agree in that situation there's been no waiver, even if the applicant chooses to withdraw. First of all, those aren't our facts, but I'm going to answer your question anyway. If the state board encouraged the withdraw and resubmit, FERC has said over and over again. I'm just trying to get away from encouraging. I'm just saying, suppose the state says, we don't care what you do. You could either withdraw and resubmit, or we can deny it because it's incomplete right now, and you can resubmit. No, take your choice. And then suppose this happens every year for four years in a row, and every time the applicant makes the choice to withdraw and resubmit. In that situation, would you say that the state has waived? I'm sorry. If it's unilateral, which we don't dispute, that is not coordination. But I don't agree with your hypothetical that those facts would be unilateral if the state were encouraging or they were coordinating. Now, we don't have those facts. You could still call that coordination because the state is in on the scheme, so to speak, of allowing withdrawal. They're communicating with the applicant, and they're just saying, you could withdraw it. Sure, you can withdraw it and resubmit it, or we'll deny it. Your choice, whatever you'd like to do. But in a whole series of proceedings, cited in Village and Morrisville, and in our brief, every time the state board said, please withdraw and resubmit, nothing more than that. The FERC held that that was evidence of coordination in and of itself, and therefore, that the basis for finding waiver. Right, no, I understand that. I'm just trying to, what FERC has said before and what they say now, I mean, we could talk to the agency about that, but I'm just trying to understand your theory. Under your theory, there would have been a back-and-forth between the state and the applicant. Yes. And the state would have said, sure, withdraw it and resubmit it, or, you know, we'll deny it, and you resubmit it. It doesn't matter. I mean, I take it in that situation, there wouldn't be a waiver. Well, I'm not prepared to concede there wouldn't be because those aren't our facts. You would say in that situation, the state might have waived, even though the state just left it up to the applicant. No, no, I didn't say the state wouldn't have waived. I thought you were asking me if that would not constitute evidence of coordination. What I'm saying is that if the state encouraged the withdrawal and resubmittal, that's evidence of coordination, and those are our facts. If the state had said, you can withdraw and resubmit, or we'll be prepared to deny it, which I think is your hypothetical. Yes. I'd have to think more about that, but I think at that point, the applicant would have had to decide which route it preferred to go, and there would have might have been a reason to go denial without prejudice. They could challenge what the board did. Which anybody could. But they couldn't. No, there was no bar against doing that. No, but I was gonna say, but they couldn't if they withdrew and resubmitted. And everybody withdrew and resubmitted across the entire state because the state board is the regulator and had everyone in a vice. They had everyone in a position where they had no choice but to go along with the regulator. You don't tell your regulator I'm not gonna do what you just asked me to do. Nobody did that. Not one applicant did that. Sure, but that doesn't mean there wasn't a choice to do that. Well, but there wasn't presented a choice here. We do not have those facts. I defy them to point you to any place in the record where the state board said, you can withdraw and resubmit or will deny without prejudice. That actually happened here. I'm wondering about the breadth of your theory, whether you think that even in that situation, we would say that the state has well, if the state were still encouraging the withdrawal and resubmittal, I would argue it's coordination. If it truly was, it's up to you. Then I suppose that would be unilateral. That's the question. And in the facts that we have, we never have that choice. It's always please withdraw and resubmit. So if the state got back and said, look, it's a particular state officer and state officers is look, I don't honestly, I don't care that much whether you withdraw and resubmit or whether we deny and you submit. Honestly, I'm supposed to go on vacation next week. All else be equal. I just assumed you withdraw it because then I wouldn't have to issue a denial order. But, you know, would you? Is that coordination that elicits a withdrawal? I believe so. Yeah, because they're saying please withdraw and resubmit. We even have one email. It says I'm getting ready to go on vacation for the holidays. So could you resubmit early? But this is the pattern all the way through the state board, encouraging the withdrawal and resubmit. Those are our facts. What sense does that does your rule make? I mean, if we announce it, you get a waiver, which is great for you. But going forward, the state agencies are just gonna deny without prejudice. Okay, then there shouldn't be any widespread concern about it. They can do that. I'm not fighting you on the fact that the agency can deny without prejudice if so chooses. And then that would satisfy Turla. But what I'm saying is on this record functionally, how is it relevantly different from they do that except they're effectively doing that, except they're giving you a, um, sort of a more more gracious way of proceeding? Well, because you you pull it rather than they deny it and things move forward. Well, again, none of these applicants were ever presented with the either or that I know of. Everyone was asked to withdraw and resubmit. And it's an either or because you could have refused and they would have denied it and you could have thought this is, as I said before, to the chief judge, I can't point you to a single app for a single project in the entire state where anybody said we're not withdrawing and resubmit. Do what you have to do. People don't do that with their regulator. I wouldn't do that with FERC. We have to get licenses from them. We have to keep them satisfied. I mean, Your Honor, if I may tell you a little story when we were brief in this case, we put in the first round of briefs and then the J. Then we submitted the paper copies with the J says, I get a call from the clerk's office the next day. Mr McBride said, Yes, said you submitted two sided copies of the paper briefs. The judges prefer one sided copies. Would you please withdraw and resubmit? What do you think I was gonna say? No, she didn't have to say you're ordered to. I did it because you have the authority in the matter, and she has your delegated authority and sustain with the state board when they asked us to withdraw and resubmit. That's the regulator talking to us. And you want a rule that would effectively force our clerk's office to bounce that brief and make you refile it. No, I'm not asking for that rule. I voluntarily at that will be the rule. If you know, I mean, I didn't want to antagonize you, obviously. And if you want one sided copies, of course, I'll get you one side. One more. One question for me. Assume hypothetically that for prevails in Morrisville, do you have any distinction? I do. You'd like to push on us. I do. Thank you for the question. Um, in Village of Morrisville, the the applicant is I understand the facts saw that it was in its interest to withdraw unilaterally, as I understand it. That was the characterization. That's the argument. I'm not trying to tell you. I know for sure. Judge what the facts are. They're before you. All I understand is what I just said to you, that the applicant voluntarily withdrew and resubmitted for its own purposes. That did not happen for NID or PG&E. That's the distinction. And FERC claims at page two that we unilaterally withdrew. There's no evidence of that whatsoever. FERC, by the way, also claims that the applications were not complete. Every single one of the communications from the state board says they were. I know I'm over my opening time. I had reserved three minutes, but I don't want to cut off your questions. Feel free. If you have more, I appreciate it. Thank you very much. Okay, thank you, Counselor. We'll give you some time for rebuttal. Thank you very much. Mr Fish. Good morning, Your Honors. Mr Chief Judge, and may it please the court, Jared Fish for the commission. I'd like to bring this back to the statutory text if I may at the beginning, because I think that's gotten a little lost here. Under Section 401 of the Clean Water Act, a state retains its water quality certification power so long as it does not fail or refuse to act on request for certification within one year of receipt. As a matter of law, where an applicant chooses to withdraw its request before the one year deadline, thereby depriving the state of the power to act on that request. The state has not failed or refused to act on that request. When it doesn't act on something it has no power to act on at at the one year mark. Uh, all parties agree the state lacks the power to do so. So under my friend's proposed test on the other side, um, an applicant could withdraw its request at Day 10 at Day 50 at Day 200, uh, depriving the state of the power to act on the request and then cry waiver once the one year mark has elapsed. That makes me conceded in the reply brief. And now it argument, uh, Mr McBride can dispute this and rebuttal if he wants. I think they've conceded that some form of coordination is required on just a withdrawal wouldn't do the job. So I think what I would want to know is what type of coordination is there anything short of Hoopa Valley that FERC thinks would amount to a waiver? Uh, I'm not sure that we would need the exact same faxes Hoopa Valley, but I think the key part of Hoopa Valley is what the state did or didn't do, not what the applicant did or didn't do. So in Hoopa Valley, the states bound themselves to not act on certification requests within a year over and over and over again. They put that in writing in a contract. They said they were going to refuse to act. That qualifies as waiver under the plain text of Section 401. Further, the applications for certification, they were complete and ready for review. The states had asked for no additional information that they said they needed in order to complete the state level analysis. Uh, here. So so that under any definition of failure or refusal to act, uh, qualifies and triggers waiver here. Uh, the states did not have all the information. The California Board did not have all the information it needed to complete its analysis. Uh, it required the CEQA review that was to be conducted by the Nevada Irrigation District in Yuba Bear. Uh, the district was the lead agency for CEQA purposes in that matter. Uh, the district didn't even start the CEQA analysis until June of 2024. Uh, and in Drum Spalding, where PG&E was the licensee, uh, the state of California required information on, uh, Endangered Species Act consultation between FERC and the National Marine Fishery Service before it could complete its CEQA analysis. Those facts are materially identical to the facts that this court considered in the Turlock case. There, just as here, the California Board did not have all the information it needed to complete its CEQA analysis. Um, there as here, the board indicated that it was prepared to deny without prejudice if the applications were not withdrawn, and this court found no waiver. Now, Mr McBride says there was no evidence here that the board was actually, in fact, willing to deny. There is ample evidence of that. Um, at JA 296, 298, 300, 579, with respect to the Drum Spalding matter, each time, uh, I think almost every time, uh, that the California Board acknowledged receipt of a certification request, it said that under California Law 23 CCR 3836 and 3837, it would deny without prejudice if the CEQA analysis was not complete. So it was completely within the district's control to force that denial. Um, the fact that there was a pattern in practice of withdrawal and resubmittal doesn't change the fact that the state did not fail or refused to act where it was prepared to act in the first place. Uh, you know why? I mean, we can ask the statement. Why? What is the reason to do? Even if it's a everything's an echo voice, but on balance, I'd rather have a withdrawal than a denial. That's a good question, Judge Sreenivasan. And by their own declarations in their briefing, it seems the district would actually prefer a denial without prejudice. As they note at page two of their reply brief, a denial gives them state action. They can challenge in state court, right? I think they could have done that. But you know, you've heard that there's practical interest in cooperating with the regulator, and I think it's a practical matter. We can appreciate that as well. But usually, I mean, what I take from what Mr McBride is saying is there was some element of coercion or inducement. Usually where there's like a course of ask, it's you should do this or else something worse will happen on if you don't. Well, here, that other thing that would have happened was denial without prejudice, which would have given the district and PG and E an opportunity to challenge that denial in state court and perhaps perhaps get a determination that the denial was unlawful. Other than the possibility of review in the state system, do you know of any practical difference between withdrawal and resubmission and denial without prejudice and resubmission? I don't. There is, under FERC regulations, for an original license, we're not dealing with an original license here, we're dealing with relicensing for an original license, if an applicant receives at least two denials from a state, then there's a possibility that the Commission will abandon the licensing, but that's that's not a policy that applies to relicensing proceedings. The whole idea there is the Commission wants to make sure that land that is not already committed to a project is freed up for useful purposes. Here, the land is already committed, the dams are already built, the projects are already operating. Can I ask about a different situation? So imagine that the applicant had done everything that was required of it under state law, but the board was delaying for whatever reason. Maybe it just takes a long time on the state side to get this done. Would FERC have a different position about waiver in that kind of situation? We took a different position in the Placer County case, so that's a matter that also involved withdrawal and resubmittal, where the California board had all the information that it said it needed, and withdrawal and resubmittal happened in the context of the board doing nothing for several years, and we found waiver. So sure, that's that's a different circumstance, but this court... Would the same go for denials without prejudice? The package is pending, and the state each year just denies it without prejudice. That's a harder question, Your Honor, because as this court in Turlock has already held, a denial for whatever reason is an action for purposes of defeating waiver under Section 401. And this court has also said in its Keating decision at page 622, in its City of Tacoma decision, which I don't think we mentioned in our brief, so I'll give you the site, 460 F3rd 53 at page 67, where this court said FERC's only role is to determine whether the state has actually acted on a request for certification, granted or denied, and not peel that back and determine the legitimacy of that grant or denial. That's generally a question of state law for state courts, and that's the recourse that an aggrieved licensee... It may not be this case. I guess what I'm getting at is Turlock sure emphasized a lot that the applicant had not done what was required of it, and you could end up in a very similar situation with a state for whatever reason not wanting to issue a final action and just issue repeated hollow denials without prejudice. Seems like that's not been resolved. I understand, Judge Garcia. So I have two responses. First, this court doesn't have to reach that question here because the facts here are materially identical to Turlock. It was the same CEQA review that was pending. It was the same situation where the applicants hadn't submitted all the information. However, as we note at page 32, footnote 2 of our brief, we're not prejudicing a future case where the state does issue seriatim denials without prejudice, without taking any action on the request. And, you know, I'm spitballing here, but you could imagine an interpretation of the statute that might conceivably not allow that. So the statute requires that the state act on a request for certification. Query whether a state's refusal to even consider a request, notwithstanding its denial, but refusal to even consider the request constitutes an action on that request when it denies it. That would be a more difficult case, and it might present legal issues that are closer to the line, but the court certainly doesn't need to wait into that question here. And I would just add, Mr. McBride said that it wasn't really voluntary here. It was absolutely voluntary for the applicant to withdraw. The Ninth Circuit already held that, page 933 of its opinion, that there was a choice that the district could withdraw or could subject its certification request to a denial. And I'll note that argument is forfeited in any event because the district doesn't present, doesn't argue in its brief that it lacked a choice. This was a voluntary action, and where the applicant chooses to withdraw, thereby depriving the state of the power to act, then that withdrawal can't be imputed to the state to find that the state failed or refused to act, where there's evidence here that the state was prepared to act. And I'll just add, I gave you the citations for the Drum Spaulding Project, where the state, in its acknowledgment of receipt of certification requests, said it would deny if the CEQA review was not completed. As for the Yuba-Bear Project, that's also a holding of the Ninth Circuit at page 933, finding that the state of California was prepared to deny absent of withdrawals, and that issue was certainly issue precluded because that was a factual finding by the Ninth Circuit. Finally, I'd add the district has completely abandoned, I believe in their reply brief and certainly here at argument, abandoned any contest with our interpretation of Section 401 of the statute. They're completely arguing that this is a substantial evidence case. Well, substantial evidence findings are reviewed for abuse of discretion, and here, the Commission found substantial evidence that the board did not fail or refuse to act for the reasons I already stated, because the facts are materially identical to Turlock, and the board said that it was prepared to deny absent of withdrawals. That is, that is sufficient to resolve this case. Judge Katsas, as for the distinctions with Morrisville, in all relevant contexts, this case is just like Morrisville. Mr. McBride likes to focus on what the applicant's interests were, what the applicant did. In Morrisville, there was evidence that the applicant sought withdrawal and resubmittal so that it could buy itself more time to negotiate better water quality conditions from the state of Vermont. True, there's not evidence that the district was trying to do the same here, but the question isn't what the applicant's interests were or what the applicant was doing, the question under 401 is what the state did or what the state didn't do, and in both cases, the point is the state was prepared to act. The state of Vermont was prepared to grant water quality certification, in that case, absent withdrawal and resubmittal. The state of California was prepared to deny water quality certification here, absent withdrawal and resubmittal. So, for all material purposes, Morrisville is just like this case. Is there a backstory to Hoopa Valley? I mean, I'm trying to think why we need to police this kind of situation where one would think that the state has every incentive to move things along and get updated standards in place rather than 50-year-old standards under the one-year license. So, it's like something very strange must have... either I'm not understanding the incentives or something really strange was going on there. Can you help me? Sure, Judge Katsas. Pretty much everything was different about Hoopa Valley. The backstory is that the state... Why would the state have done that? Because the dams in question were... there was a proposal to decommission the dams, and so instead of going through the laborious relicensing process, issuing water quality certifications, getting a new license from FERC, the states thought it was more expedient to try to stall that relicensing process, pending securing federal funding to decommission the dams rather than relicense them. So, in that case, these incentives were different. In that case... In other words, in that case, I went back and tried to look at this a little bit, we did, and there was a state interest in being part of a scheme that assured that the state wouldn't issue a decision within a year, because there was a funding stream that could potentially come through. Right. There were not a denial if there were a withdrawal instead, and so the state was part of this joint enterprise to make sure that a decision wasn't issued within a year. Exactly, Judge Srinivasan. So, the incentives... There's nothing like that here. But, you know, if we're going to look at this race versus mens rea, at the end of the day it's what the state actually did or didn't do, and there, the key holding of Hoopa Valley is that the state entered into a contractual agreement to prevent itself from actually acting within a year. So, you know, that's a significant distinction in that matter. But I would say, I think we can place too much emphasis on the a relevant piece of evidence in helping determine whether the state failed or refused to act in hard cases. In Morrisville, the motivation of the applicant helped substantiate the finding that the state actually wasn't failing or refusing to act, but at the end of the day, as the Commission found here, what mattered was lack of evidence that the states failed or refused to act, because, again, they were ready to deny and the applications for certification were not complete because the CEQA analyses had not been conducted. Thank you, Kevin. Thank you, Your Honors. McCarthy. Good morning, and may it please the Court, Kristen McCarthy on behalf of the Intervenor California State Water Resources Control Board. Here, the applicants withdrew and resubmitted their applications. No party disputes that a state has no obligation and, indeed, no authority to act on a withdrawn request for certification, so the only question presented here is whether the narrow exception that this Court identified in the extreme circumstances of Hoopoe Valley applies to the facts of this case. The question is whether the evidence in these cases compelled FERC to have found that the applicants' decisions to withdraw and resubmit were not the applicants' decisions themselves, but were because the California State Board was engaged in a coordinated scheme, as in Hoopoe Valley. Here, FERC was not compelled to find that. FERC found that there was not substantial evidence in the record of this State Board engaging in such a coordinated scheme. It may be that there wasn't the same evidence of a coordinated scheme. I mean, I think there's force to your submission in that respect. I'm just curious, just as a practical, factual matter, it does look like the State, on balance, would just as soon have applicants withdraw instead of the State denying. Is there a reason? The State... Thank you for the question. The State has no preference. Withdrawal and resubmit versus deny without prejudice is functionally the same thing. There was a practice that developed, at least prior to the Hoopoe Valley decision, where withdrawal and resubmit was just kind of the common practice that was happening, and so... How was that, then? I mean, if that's a practice... Why did that practice develop instead of a denial and then resubmittal practice? To be perfectly honest, Your Honor, I have no idea, but it was the practice that was in existence, and so what you can see from the emails, when the emails from, for example, the State Board staff that NID's counsel is pointing to at JA 527 and 529, reminding the applicant of their one-year deadline coming up and saying, please withdraw and resubmit, he quoted as done in the past, that's simply acknowledging that this was the common practice, and no one disputes that it was a common practice, at least prior to the Hoopoe Valley decision. The substantial evidence in the record here supports FERC's finding that there was no waiver in these cases, and indeed the evidence, which was simply letters confirming receipt of refilings and those courtesy emails that I just referenced, were basically identical to the evidence that the Ninth Circuit considered, and in California State Board versus FERC found that that evidence could not support a finding of waiver. The Fourth Circuit decision in North Carolina Department of Environmental Quality versus FERC was in accord under similar facts, and both of those Ninth and Fourth Circuit decisions stated the state's authority to issue conditions that will protect water quality and become part of these federal licenses is far too important to be waived under such just small courtesy emails that are just acknowledging the pattern and practice that existed at the time. I just also wanted to judge Katz's point that you made regarding the applicant here holds the keys. So if the applicant truly believed that the state board had some sort of motive, some sort of reason that it wanted to drag out the process or delay the one-year deadline, all it had to do was not withdraw its application. It simply could have forced the board to deny without prejudice, in which case that decision could have been challenged in state court. If there are no further questions, I will just say the state board joins FERC's request that the court deny NID's petitions and affirm FERC's orders. Thank you, counsel. Mr. Chief Judge, I'll give you the three minutes that you asked for for rebuttal. Thank you, very kind of you. First thing let me hit is why would the state want more time? That was your question, and then FERC addressed it and so did the state board. And it was not only, in other words, and so asked to withdraw and resubmit instead of deny without prejudice. It's not just that there was a right to challenge. Let me submit to you that there was another very important reason. The state wanted more time, and we go into this on briefs, to impose conditions. Very, very significant to us. If you look at JA 49 to 50 and JA 136, these are the two certificates and conditions. The state board was proposing to impose on these applicants a duty to mitigate mercury, which we had nothing to do with. They even say it was based on historic gold mining activities. In other words, from the 1850s and the gold rush. There are estimates this could cost billions of dollars to remove the mercury that we had nothing to do with. There also is a condition 1D that the state board wanted the right to reopen effectively. They didn't use the word reopen, but to keep renewing and relooking at various provisions throughout the tenure of the FERC license. And the EPA has held the state can't do that. Once the state's conditions are included in the certificate and incorporated into the license, it's solely up to FERC to impose those conditions. FERC tried once again to argue the facts are materially identical to TURLOC. They're not. In TURLOC, the state acted as this court has held. That didn't happen here. There was no denial without prejudice. Saying prepared to deny without prejudice is not acting within the meaning of TURLOC. And then let me submit to you that the Placer County case that FERC tried hard on brief and again today to distinguish is I think on all fours with this case. In both Placer County, and we've cited the cases, but it's at 167 FERC 6156, I believe. It cites a whole series of proceedings before FERC in which similar emails, please withdraw and resubmit, constituted coordination. And in Village of Morrisville, in footnote 62 in the first decision, footnote 27 in the order on rehearing, similar proceedings were cited where FERC says that essentially identical emails to what happened to our clients here, please withdraw and resubmit, itself was sufficient to constitute coordination. That was FERC's holding as late as 2021 or even later in Placer County and in Morrisville. And FERC simply has failed to abide by its own prior precedent here. There's no distinction. There is no evidence we unilaterally withdrew and resubmitted. We did so. I think one thing the Commission said about Placer is there the evidence was or at least FERC had found that the applicant had done everything it needed to do to complete the state review and their position is that you hadn't in this case. Well, we did everything we needed to do. The applications were complete. That's what the letters say. We were never in violation of CEQA. And in fact, there was no reason then to get into CEQA once FERC held waiver. Once the Ninth Circuit reversed, we have now instituted CEQA. But CEQA doesn't mean your application is not complete. In fact, under state law now, they can grant the certificate without satisfying CEQA. So CEQA is an additional issue, Your Honor, beyond the scope of the applications themselves. And the state consistently said that our applications were complete every single time. I think I'm out of time, but I'm happy to stand here and take any additional questions. You've answered mine. Thank you very much. It's a privilege to appear before you and Judge Garcia. I've had the privilege before Judge Katsas before. I thank you very much. Thank you, counsel. Thank you to all counsel. We'll take this case under submission.
judges: Srinivasan; Katsas; Garcia